# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
September 20, 2016

*In re* J. E. TACKETT, Minor.

No. 331443
Macomb Circuit Court
Family Division
LC No. 2014-000063-NA

Before: GADOLA, P.J., and WILDER and METER, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to a minor child, JET. The court terminated respondent's rights pursuant to MCL 712A.19b(3)(c)(*i*) (182 or more days have elapsed since issuance of an initial dispositional order, conditions that led to adjudication continue to exist, and no reasonable likelihood conditions will be rectified within a reasonable time), (g) (parent failed to provide proper care or custody and no reasonable expectation parent will provide proper care and custody within a reasonable time), and (j) (reasonable likelihood child will be harmed if returned home). We affirm.

JET came into care for testing positive for opiates and benzodiazepines at birth. At the time, respondent was incarcerated.

Respondent first argues that the court clearly erred when it found clear and convincing evidence to terminate his parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). We disagree.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). A trial court's findings of fact are clearly erroneous if "we are definitely and firmly convinced that it made a mistake." *Id*. at 709-710.

To terminate parental rights, the trial court must first find that the petitioner has established, by clear and convincing evidence, a statutory ground for termination. *Id*. at 713. A court may terminate a respondent's parental rights under MCL 712A.19b(3)(c)(*i*) if "182 or more days have elapsed since the issuance of an initial dispositional order" and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*).

-1-

The court entered its initial dispositional order on April 17, 2014, and entered its order terminating respondent's parental rights on January 15, 2016, more than 182 days later. Further, the conditions that led to adjudication included respondent's incarceration and substance abuse history. The evidence presented at respondent's termination hearing established that these issues continued to exist and there was no reasonable likelihood that the conditions would be rectified within a reasonable time.

At the time of the termination hearing on December 4, 2015, respondent was back in prison after having been released to a treatment program at a facility called Harbor Light on August 11, 2015. He returned to prison after being discharged from Harbor Light on September 1, 2015, for a positive drug screen and absconding from parole on September 10, 2015. Thus, respondent had only been out of prison for approximately three weeks before abusing drugs. Further, he admitted, at the termination hearing, that he still had a substance abuse problem. Therefore, the conditions that led to adjudication continued to exist.

In addition, the evidence presented established that no reasonable likelihood existed that the conditions would be rectified within a reasonable time. Respondent admitted that he had a history of substance abuse issues. Those issues led to the prison time he was serving at the time of JET's birth as well as his incarceration just before the termination hearing. Petitioner waited to file its termination petition until respondent was given the opportunity to complete his parent agency agreement (PAA) upon release from prison, at which time JET had been in care for almost two years. Yet, three weeks following his release, after completing substance abuse counseling in prison, and while enrolled in a treatment program, respondent abused drugs. When asked why he used, respondent said he felt overwhelmed by "[t]he potential to mess up and the responsibility of having [his] son and not knowing what's going to happen." From this evidence, it appears highly unlikely respondent would be able to keep from abusing drugs, and returning to prison for doing so, within a reasonable time considering JET's age.

Next, the trial court did not err when it found clear and convincing evidence existed to terminate respondent's parental rights under MCL 712A.19b(3)(g). A trial court may terminate parental rights under MCL 712A.19b(3)(g) if it finds, by clear and convincing evidence, that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g). "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App at 710.

Respondent failed to provide JET with proper care or custody. Respondent had been incarcerated for the majority of JET's life and was again incarcerated at the time his rights were terminated. In terminating respondent's rights, the court acknowledged that he had failed to complete portions of the PAA through no fault of his own, because those services had not been available in prison. However, he also failed to grasp the opportunity to complete his PAA once released from prison, by using drugs and getting sent back to prison. He never obtained suitable housing or a legal source of income, and failed to benefit from his substance abuse treatment as evidenced by his relapse. Further, although "Michigan traditionally permits a parent to achieve proper care and custody through placement with a relative," *In re Mason*, 486 Mich 142, 161 n

11; 782 NW2d 747 (2010), the relatives caring for JET wanted to adopt and were unwilling to consider guardianship.

In addition, for the same reasons as stated above with regard to MCL 712A.19b(3)(c)(*i*), the evidence demonstrated that there was no reasonable expectation that respondent would be able to provide proper care and custody for JET within a reasonable time. Respondent had a history of substance abuse and quickly relapsed upon release from prison. Further, he acted knowing that petitioner waited to file its termination petition until he was released from prison and had the opportunity to complete his PAA.

Finally, the trial court did not clearly err when it terminated respondent's parental rights under MCL 712A.19b(3)(j), which provides that a parent's rights may be terminated if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j). "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App at 711. JET had been in care for almost two years at the time of termination, and respondent could not provide a date for his release from prison. Given the uncertainty regarding respondent's release from prison, his failure to fully and successfully comply with the PAA, and his recurring substance abuse, there was a reasonable likelihood that JET would be harmed if placed with respondent.

Next, respondent argues that the court clearly erred by finding termination to be in JET's best interests. We disagree.

This Court reviews a trial court's determination regarding best interests for clear error. *Id*. at 713. "A trial court's decision is clearly erroneous '[i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012), quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989) (citations and quotation marks omitted; alteration in original).

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the [child's] best interests." *In re White*, 303 Mich App at 713; see also MCL 712A.19b(5). To make its best-interests determination, "the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Further considerations may include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the [child's] well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. In addition, placement with a relative weighs against termination. See MCL 712A.19a(6)(a).

In making its best-interests determination, the court considered respondent's bond with JET, JET's need for permanence and stability, and respondent's parenting ability. It found that

respondent had never been JET's primary caregiver because he entered care at birth, and that respondent lacked the ability to properly parent or provide stability for JET. Further, the court acknowledged the willingness of JET's relatives to adopt rather than serve as JET's guardian.

The evidence presented at the termination hearing supported the court's findings and best-interests determination. Although respondent visited with JET 18 times while incarcerated, he lacked a meaningful bond with the child. Indeed, respondent never personally cared for JET and had been incarcerated or in treatment facilities for JET's entire life. He also lacked the ability to provide JET with permanence or stability. When provided the opportunity to work towards reunification with JET upon release from prison, respondent returned to abusing drugs, which led to another incarceration with no set release date. Moreover, the relatives caring for JET expressed a willingness to adopt, but refused to consider guardianship. Thus, the court did not clearly err when it determined that it was in JET's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Michael F. Gadola
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter

-4-